**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **SEALED** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **v.** | **Case No. 2:13CR763DAK** |
| **MICHAEL JAMES PASCAL,** | **Judge Dale A. Kimball** |
| **Defendant.** | |

This matter is before the court on Plaintiff United States of America's Motion in Limine to Admit Evidence Pursuant to Federal Rule of Evidence 413. The United States seeks to introduce evidence of the defendant's alleged prior act of sexual misconduct with a thirteen-year-old girl approximately seven years prior to the charged offense. On January 21, 2014, the court held an evidentiary hearing on the motion. After the hearing, the parties were allowed to resubmit memoranda with respect to the motion. Based on the evidence presented at the hearing, the parties' arguments advanced at the hearing and in their written memoranda, and the law and facts relevant to the motion, the court enters the following Memorandum Decision and Order on the United States' motion in limine.

## FEDERAL RULE OF EVIDENCE 413

As part of the Violent Crime Control and Law Enforcement Act of 1994, Congress enacted Rules 413 through 415 of the Federal Rules of Evidence. Pub. L. No. 103-322, 108 State. 1796 (1994). These rules provide standards for the admission of evidence of a defendant's

commission of other sexual assault or child molestation offenses in cases where the defendant is charged with a federal sexual assault offense.

Federal Rules of Evidence 413 through 415 are designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H891-92 (1994) (remarks of principal House sponsor, Rep. Molinari). Rule 413 provides, in pertinent part

> In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.

The Tenth Circuit has explained that Rules 413 and 414 provide an exception to the general rule codified in Rule 404(a), which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts. *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citations omitted). Rules 413 and 414 provide a specific admissibility standard in sexual assault cases, replacing Rule 404(b)'s general criteria and superseding the restrictive aspects of Rule 404(b) in sex offense cases. *See United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir.1997) (citations omitted).

In contrast to Rule 404(b), which only allows uncharged other act evidence to be admitted on non-character theories of relevance, Rule 413 through 415 allows such evidence to be admitted and considered for its bearing "on any matter to which it is relevant." Also, unlike Rule 404(b), Rules 413 through 415 operate under a presumption that evidence of prior sexual assault or child molestation offenses is admissible.

Also, "Federal Rules of Evidence 413 and 414 address propensity evidence in the context of sexual assault and child molestation. These rules provide an exception to the general rule codified in Rule 404(a), which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts. Pursuant to Rule 413(a), when 'the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant . . . . Consistent with congressional intent regarding the admission of evidence tending to show the defendant's propensity to commit sexual assault or child molestation, 'courts are to 'liberally' admit evidence of prior uncharged sex offenses.'" *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007) citing *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997).

In order to be admissible under Rule 413, prior sexual assault evidence must meet three threshold requirements: (1) the defendant must be accused of a crime involving sexual assault; (2) the evidence offered under Rule 413 must be evidence of another offense of sexual assault; and (3) the evidence must be relevant. *Benally*, 500 F.3d at 1090.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2013, a grand jury returned an Indictment charging Defendant with two counts: (1) Abusive Sexual Contact in violation of 18 U.S.C. § 2244(a)(3); and (2) Abusive Sexual Contact in violation of 18 U.S.C. §2244(a)(2). The government expects that the evidence at trial will establish the following general facts:

The United States alleges the following facts will be presented at trial with respect to the present case:

1.      On October 26, 2013, a fourteen-year-old girl named R.S. was traveling from Detroit, Michigan, to Salt Lake City, Utah, on Delta flight 855. R.S., in addition to being an unaccompanied minor, had an injured foot, and was allowed to board the aircraft before the other passengers. R.S. was seated in 44F, a window seat. Defendant was also a passenger on flight 855, and was seated next to R.S. in 44E. Defendant and R.S. engaged in a brief conversation in which they discussed how R.S. had injured her foot and the fact that she was an unaccompanied minor. Defendant also helped R.S. obtain a blanket from the flight crew. R.S. lowered the arm rest between herself and Defendant and covered her lap with the blanket. R.S. put her feet up on her seat and fell asleep with her legs pulled in to her chest.

2.      R.S. later awoke and found that Defendant was touching her buttocks over the clothing. Defendant's hand was under her left buttock, and his fingers were touching her inner thigh. Defendant's hand was palm-up, and he was gripping her buttock. The armrest between R.S. and Defendant was now up. The defendant was leaning toward R.S. and some of his weight was on her. R.S. observed that his eyes were open. R.S. struck Defendant with her arm and asked him what he was doing. Defendant quickly pulled his hand out from under R.S., lifting her body slightly as he did so. Defendant stated that he was sorry and that he had been asleep. Defendant stated that he needed to use the bathroom and left the row. R.S. pressed the flight attendant call button and told the flight attendant who responded that the passenger sitting next to her had put his hand under her. The flight crew moved R.S. to another seat, where she remained for the duration of the flight.

3.     Defendant was interviewed on October 26, 2013, after flight 855 had landed in Salt Lake City. Defendant acknowledged that he had been sitting next to R.S. and that he had helped her obtain a blanket from the flight crew. Defendant stated that he had raised the armrest between himself and R.S. because the male passenger to Defendant's left was taking some of Defendant's space. Defendant stated that he fell asleep and was later awakened when R.S. struck him on the arm and asked, "What the hell are you doing?" Defendant stated that he did not know where his hands were when he woke up. Defendant said that it was possible for his hands to have fallen into R.S.'s seat while he was asleep, but he could not recall where his hands were.

On January 10, 2014, the United States filed the present motion in limine requesting the admission of evidence of a prior sexual assault pursuant to Federal Rule of Evidence 413. On January 21, 2014, the court held an evidentiary hearing at which it heard testimony from S.B., A.B., Special Agent Daniel Horan, B.P., and Defendant. The witnesses testified as follows:

1.     Testimony of S.B.

S.B. is currently nineteen-years old and is a college sophomore. (January 21, 2014 Hearing Transcript ("Hr.T.") 11-12:15-4). S.B. first met Defendant in the summer of 2006. (Hr.T. 12-13:18-2). S.B. was twelve-years old at the time. (Hr.T. p. 12:21-22). A.B. (S.B.'s mother) had decided to take S.B. on a camping trip with Defendant and other friends. (Hr.T. 13:5-11). A.B. drove S.B. to Defendant's home in Salt Lake City. (Hr.T. 13-14:24-5). S.B. was introduced to Defendant's daughter, who was close in age to S.B.. (Hr.T. 14:14-15). S.B. described Defendant's home as a two-story residence with bedrooms upstairs and a living room and kitchen on the main level. (Hr.T. 15:4-14). S.B. recalled that a deck adjoined the living room. (Hr.T. 15:5-10).

S.B. was still awake when her mother went to sleep.  (HrT. 15:18-22).  S.B., Defendant, and Defendant's daughter began watching a movie together.  (Hr.T. 15-16:25-2).  Defendant made a bowl of popcorn, and gave it to S.B..  (Hr.T. 16:7-7-8).  Defendant sat on the ground very close to S.B. and leaned his head against her knee.  (Hr.T. 17:2-9).  S.B. felt uncomfortable and inched away. (Hr.T. 17:10-19).  Defendant continued to lean against S.B.'s knee. (Hr.T. 17-18:23-1).  S.B. excused herself and went to the room where A.B. was sleeping.  (Hr.T. 18:10-11).

S.B. described the room as having a desk and a window.  (Hr.T. 18:16-20).  The bed was low to the ground and approximately a full size.  (Hr.T. 18:21-25).  S.B. said something to her mother, but does not recall what she said.  (Hr.T.19:1-5).  S.B. fell asleep next to A.B..  (Hr.T. 19:8-9).  S.B. recalled that she was wearing a T-shirt and sweatpants.  (Hr.T. 19:10-12).  S.B. awoke when she felt something touch her back.  (Hr.T. 19:13-16).  When S.B. awoke, she was on her right side facing A.B..  (Hr. T. 19:17-20).  S.B. was on the side of the bed closest to the door.  (Hr.T. 19:21-22).  After S.B. woke up, she turned to see what had touched her.  (Hr.T. 19:19-20).  S.B. saw Defendant lying on the floor.  (Hr.T. 19-20:25-6).  S.B. was able to see that it was Defendant because light was coming in through the window.  (Hr.T. 20:3-4).  Defendant was right against the bed.  (Hr.T. 20:7-11).

S.B.'s body was touched from the bottom of her back to the top of her buttocks.  (Hr.T. 20:17-19).  S.B. described the area as "[w]here the rise of my buttocks begins, but not yet to the crack."  (Hr.T. 21:19-23).  The touching was skin-to-skin because S.B.'s shirt had risen up. (Hr.T. 22:1-6).  At first the touch was just a graze.  (Hr.T. 22:7-8).  Defendant rubbed S.B.'s body in a head-to-toe direction.  (Hr.T. 22:9-18).

S.B. thought that Defendant may have found the wrong room and passed out. (Hr.T. 22:21-22). S.B. fell asleep again. (Hr.T. 22:23-24). S.B.'s hips were still facing toward her mother and her shoulders were against a pillow. (Hr.T. 23:4-11). S.B. was awakened a second time by Defendant touching the same area of her body. (Hr.T. 23:17-24). This time the touch was more of a caress, and was longer than the previous "graze." (Hr.T. 23:20-22). S.B. described the touch as a rubbing of her body in a head-to-toe direction. (Hr.T. 24:6-11).

S.B. wondered if Defendant had mistaken her for her mother, and turned her face so that Defendant could see her. (Hr.T. 24:12-16). S.B. pretended to be asleep but cracked her eyelids open. (Hr.T. 24:20-25). S.B. could see Defendant's face. (Hr.T. 24:17-18). S.B. could see that Defendant was looking at her. (Hr.T. 25:4-9). S.B. waited to see if Defendant would leave. (Hr.T. 25:1-5). Defendant moved his hand onto the bed and touched S.B. again. (Hr.T. 25:11-22). S.B. hit her mother and said that Defendant was touching her. (Hr.T. 25:23-25). A.B. stood up and yelled at Defendant. (Hr.T. 26:2-3). Defendant left the room, and A.B. followed him. (Hr.T. 26:7-8). A.B. returned to the room and began packing. (Hr.T. 26:8-9). A.B. told S.B. to go wait in the car. (Hr.T. 26:10-13).

S.B. and A.B. discussed whether to report the incident to the police. (Hr.T. 26:20-22). S.B. did not want to report it because she felt that the situation was over and she didn't want to be involved in a police case. (Hr.T. 26-27:24-5). S.B. was also concerned about how her father would react if her father learned about the incident. (Hr.T. 27:9-15).

2.      Testimony of A.B.

A.B. has been a flight attendant for Express Jet for thirteen years. (Hr.T. 48:12-17). Defendant was also employed by Express Jet during the same time period. (Hr.T. 48:22-25). A.B. and Defendant became friends, and socialized outside of work. (Hr.T. 49:20-24). A.B.,

Defendant, and other adult friends traveled and camped together and spent time at Defendant's home. (Hr.T. 50:1-5). In the summer of 2006, A.B., Defendant, and other adult friends talked about taking a camping trip that would include Defendant's daughter and S.B.. (Hr.T. 50:11-25). The camping trip was planned for sometime in late June or July of 2006. (Hr.T. 54:14-17). The day before the camping trip, A.B. drove S.B. to Defendant's home in Draper. (Hr.T. 51:14-24). A.B. planned on spending the night at Defendant's home because A.B. was scheduled to be on a short roundtrip flight the next morning. (Hr.T. 51-52:25-5). A.B. planned on leaving S.B. in the care of a friend named K.B. and Defendant while A.B. was at work. (Hr.T. 52:6-9).

When A.B. went to bed, S.B. and Defendant's daughter were still awake. (Hr.T. 55:6-8). A.B. slept in Defendant's computer room that night. (Hr.T. 53:11-14). A.B. slept on a bed that was either a futon or box springs mattress and was low on the floor. (Hr.T. 74:17-18). A.B. fell asleep, and was later awakened by S.B. tapping her on the shoulder. (Hr.T. 55:14-20). S.B. said that A.B.'s friend was "weird." (Hr.T. 56:19-20). S.B. also said that she thought A.B.'s friend was drunk. (Hr.T. 56:20-22). A.B. told S.B. to lie down in the bed with her and go to sleep. (Hr.T. 56:23-24). A.B. fell back to sleep. (Hr.T. 58:5-6).

A.B. was awakened by S.B. asking, "Why are you touching me?" (Hr.T. 58:10-14). A.B. jumped up to see what was going on. (Hr.T. 58:14-15). A.B. saw Defendant lying on the floor near S.B.. (Hr.T. 58:16-19). A.B. screamed and cussed. (Hr.T. 59:2). Defendant jumped up and ran out of the room. (Hr.T. 59:4). A.B. followed Defendant but could not find him. (Hr.T. 59:8-9). A.B. looked in Defendant's bedroom, then returned to the computer room. (Hr.T. 59:13-20). A.B. told S.B. to get her stuff together. (Hr.T. 59:21-22). A.B. sent S.B. out to the car and told S.B. to lock the door. (Hr.T. 60:4-5). A.B. looked for Defendant for a few minutes, then joined S.B. in the car. (Hr.T. 60:18-24). A.B. drove S.B. to A.B.'s residence in Emigration

Canyon.  (Hr.T. 61:1-3).  A.B. called Defendant and spoke with him by phone later that day.

(Hr.T. 63:17-23).  Defendant told A.B. that he was sorry, that he was intoxicated but shouldn't

have been drinking, and did not remember what had happened that night.  (Hr.T. 63-64:24-6)

A.B. did not report the incident to the police.  (Hr.T. 61:18-19).  A.B. was scared and

mad and "clouded."  (Hr.T. 61:21-22).  When A.B. returned to work the following week, A.B.

did not see Defendant.  (Hr.T. 62:6-10).  A.B. heard that Defendant had entered a rehab program

for alcohol abuse.  (Hr.T. 62:11-15).  At that time, A.B. thought that "alcohol was the problem"

and that rehab would help Defendant address the problem.  (Hr.T. 64-65:19-2).

3.      Testimony of B.P.

B.P. is also employed by Express Jet airline.  (Hr.T. 104:4-7).  B.P. and Defendant met

through work and were crew members.  (Hr.T. 105:6-10).  B.P. and Defendant became friends

and socialized outside of work.  (Hr.T.  115:14-25).  Defendant and B.P. also socialized with

A.B..  (Hr.T. 115:1-6).  B.P. and Defendant were roommates at one time and shared a residence

in Draper.  (Hr.T. 105:11-15).  B.P. was living at the Draper residence the night that A.B.

brought her daughter to the house.  (Hr.T. 106:1-9).  B.P. was planning on accompanying A.B.

and Defendant on a camp-out the next day.  (Hr.T. 106:10-14).  Seven or eight adults had

gathered at Defendant's home that night.  (Hr.T. 107:8-13.  B.P., Defendant, and A.B. drank

margaritas that night. (Hr.T. 108:4-9).  A.B. ended up spending the night because she was too

intoxicated to drive home.  (Hr.T. 109:1-7).  B.P. pulled his mattress into the computer room for

A.B. to sleep on.  (Hr.T. 108- 109:8-6).  B.P. slept on an air mattress in his own room that night.

(Hr.T. 109:21-24).  Defendant was already in his bedroom when B.P. went to bed that night.

(Hr.T. 111:18-25).   B.P. slept through the night and did not hear anyone screaming or yelling.

(Hr.T. 112:6-17).

B.P. woke at 8:00 or 9:00 o'clock the next morning.  (Hr.T. 113:2-3).  A.B. was still in
the home and told B.P. that Defendant had crawled into her room, laid by her daughter's side of
the bed, and touched her daughter's back or patted it.  (Hr.T. 113-114:10-5).  A.B. appeared
calm.  (Hr.T. 128:3-12).  A.B. and S.B. left the house and the camping trip did not take place.
(Hr.T. 123:5-8).  Later that same day, B.P. told Defendant about A.B.'s statement that Defendant
had been in her room.  (Hr.T. 125:11-13).  Defendant said that it didn't happen.  (Hr.T. 125:14-
18).  Defendant did not claim that he had blacked out and did not claim that he couldn't
remember what had happened.  (Hr.T. 125:21-24).  Defendant took an extended leave of absence
from work a few days later.  (Hr.T. 126-127:21-6).  Defendant took a leave of absence to enter
rehab.  (Hr.T. 127:16-17).

   4.  Defendant's Testimony

   Defendant is a pilot for Express Jet and is currently on a leave of absence.  (Hr.T. 129-
130:21-8).  Defendant moved to a home in Draper in 2004 or 2005. (Hr.T. 130:20-22).
Defendant met and befriended A.B. through his employment.  (Hr.T. 131:17-5).  A.B. brought
S.B. to the defendant's home on one occasion.  (Hr.T. 132:13-18).  Defendant and A.B. had
discussed going camping, but did not have any firm plans.  (Hr.T. 132:19-22).  A.B. had not
planned on spending the night at Defendant's home, but ended up staying because she had too
many drinks to drive safely.  (Hr.T. 133:22-2).  B.P. pulled his bed into the computer room for
A.B. and S.B..  (Hr.T. 134:2-4).  Defendant went to bed while A.B. was still awake.  (Hr.T.
134:19-22).  Defendant remained in his bedroom the entire night and did not hear any
disturbances.  (Hr.T. 134-135:21-8).

   Defendant woke at 9:00 or 10:00 o'clock the next morning.  (Hr.T. 135:22-24).  A.B. and
S.B. were gone.  (Hr.T. 136:3-8).  B.P. told Defendant that A.B. said Defendant had come into

her room during the night, wandered around, and wandered out.  (Hr.T. 136:15-18).  Defendant

later spoke to A.B., and A.B. said the same thing.  (Hr.T. 136:18-19).  Defendant told A.B. that

he was asleep all night and didn't remember going into her room.  (Hr.T. 136:20-22).  Defendant

entered a rehab program for alcoholism shortly after that night.  (Hr.T. 137:12-13).

## ANALYSIS

## FEDERAL RULE OF EVIDENCE 413

The *Benally* court explained that evidence of a prior sexual assault must meet three

threshold requirements before it may be considered for admission.  The district court must

determine that: (1) the defendant is accused of a crime involving sexual assault or child

molestation; (2) the evidence proffered is evidence of the defendant's commission of another

offense or offenses involving sexual assault or molestation; and (3) the evidence is relevant.

*Benally*, 500 F.3d at 1090.

### A.  **Crime Involving Sexual Assault**

Rule 413 defines "sexual assault" as any conduct prohibited by 18 U.S.C. Chapter 109A,

or an attempt to engage in conduct prohibited by 18 U.S.C. Chapter 109A.  Title 18 U.S.C. §

2246(3) of chapter 109A defines "sexual contact" as the "intentional touching, either directly or

through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person,

with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any

person."  18 U.S.C. § 2246(3).   Title 18 U.S.C. § 2244 of Chapter 109A prohibits abusive sexual

contact and applies" sexual contact" to §§ 2241, 2242, 2243, and 2241(c), providing for a lesser

penalty if the act is one of "sexual contact" rather than a "sexual act."

Defendant is charged in count 1 of the Indictment with violating 18 U.S.C. § 2243(a).

Title 18 U.S.C. §2243(a) prohibits knowingly engaging in (or attempting to engage in) a sexual

act with another person who (1) has attained the age of 12 years but has not attained the age of 16 years, and (2) is at least four years younger than the person so engaging. Defendant is also charged in count 2 of the Indictment with violating 18 U.S.C. § 2242(2)(A). Title 18 U.S.C. §2242 prohibits knowingly engaging in (or attempting to engage in) a sexual act with another person if that other person is incapable of appraising the nature of the conduct. Defendant is accused of a crime involving sexual assault for purposes of Rule 413.

## B. **Prior Incident**

The second issue is whether the testimony of the incident involving S.B. and Defendant constitutes a prior offense of sexual assault or molestation. The United States asserts that the evidence meets the second requirement of Rule 413 because the incident fits the definition of "sexual contact" contained in Chapter 109A. Defendant argues that the evidence did not establish sexual contact because the contact was above the generally recognized area comprising the buttocks.

At the Rule 413 hearing, S.B. testified that when she was twelve-years old, Defendant snuck into the room where she was sleeping and rubbed her body from the "bottom of [her] back to the top of [her] buttocks." (Hr.T. 20:19). Abusive sexual contact as defined in chapter 109A prohibits intentionally touching the buttocks of another person with a specific intent to abuse or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246(3).

The area of S.B.'s body that Defendant touched coupled with the fact that he touched her repeatedly provides circumstantial evidence that Defendant acted intentionally and with the intent to abuse S.B. and/or arouse or gratify his own sexual desire. *See United States v. Haymond*, 672 F.3d 948, 957 (10th Cir. 2012) (*mens rea* may be inferred from circumstantial evidence); *see also United States v. Lee*, 232 F.3d 653, 655 (8th Cir. 2000) (intent may be

inferred from sexual nature of contact).   The incident involving S.B. therefore qualifies as a sexual assault for purposes of Rule 413.

Although Defendant disputes whether S.B.'s testimony that Defendant touched the "top of [her] buttocks" is actually the buttocks for purposes of determining whether Defendant touched an area proscribed by 18 U.S.C. § 2246(3), Rule 413 also applies to attempts to engage in conduct constituting a sexual assault.  Fed. R. Evid. 413(d)(5).  An attempt requires proof that the defendant committed a substantial step toward commission of the substantive offense.  *Seeley v. Chase*, 443 F.3d 1290, 1296 (10th Cir. 2006) (finding that defendant's conduct constituted substantial step toward commission of sexual assault for purposes of Rule 415).   "A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred."  *Id.*

In the instant case, Defendant rubbed S.B.'s lower back to upper buttocks area with his hand, in a direction from her head to her feet. The touching only stopped when S.B. moved. Defendant's conduct with S.B. is, at the very least, an "appreciable fragment" of the crime of sexual contact and a substantial step toward touching an area of S.B.'s body that is proscribed by 18 U.S.C. § 2246(3).   Therefore, the incident with S.B. also qualifies as an attempt to commit a sexual assault for purposes of Rule 413.

## C.  Relevance

The prior incident must also meet the third threshold requirement of relevancy.  Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

In the instant case, the government's burden is to prove beyond a reasonable doubt that Defendant intentionally touched R.S. Defendant claimed in his October interview that he was asleep at the time of the alleged touching, and therefore any physical contact with R.S. was unintentional. The history of Defendant touching a similar area of the body of a similarly-aged girl on a prior occasion provides evidence that Defendant was acting intentionally when he touched R.S..

The similarity in circumstances between the two episodes also sheds light on the possible intentional nature of Defendant's conduct. In both instances, the victims were asleep when Defendant began touching their bodies with his hand. Their state of unawareness allowed Defendant to begin the touching without protest or resistance from either victim. This state of unawareness also increased Defendant's chances of perpetrating the offenses without being caught, as neither victim would have realized that they had been touched if Defendant had withdrawn his hand before they awoke. The fact that both victims were asleep tends to demonstrate that the touching of R.S. was not a mistake or accident, but was in fact Defendant's intent and plan.

In addition to showing that Defendant intentionally touched R.S., the government is also required to prove that Defendant acted with a particular *mens rea*--that it was his intent to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Defendant's conduct with both S.B. and R.S. is relevant to demonstrate that Defendant has a sexual interest in young girls, and that in the instant case he may have acted with an intent to arouse or gratify his own sexual desire.

The prior sexual assault evidence is also relevant for its tendency to demonstrate that Defendant has a propensity to touch the buttocks of young girls while they are sleeping. The

Tenth Circuit has explained that Rules 413 and 414 provide an exception to the general rule codified in rule 404(a), which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts. *Benally*, 500 F.3d at 1089 (citations omitted). Therefore, the prior sexual contact may be considered for its evidentiary value in terms of demonstrating that the defendant has a propensity to commit the charged offenses.

The court, therefore, concludes that the government has met its burden of establishing the three threshold requirements for admissibility of evidence of a prior sexual offense under Rule 413.

## FEDERAL RULE OF EVIDENCE 403

The admissibility of Rule 413 evidence is still subject to Rule 403. *Benally*, 500 F.3d at 1090. Under Rule 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. If the court concludes that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, the court must exclude the evidence. *See United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998). "But the exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence 'normally' should be admitted." *Id.*

The Tenth Circuit has outlined several factors to assist with the Rule 413/Rule 403 analysis. *See Benally*, 500 F.3d at 1090-1091. The district court must make a preliminary finding that a jury could reasonably find that the "other act" occurred by a preponderance of the evidence. *Id*. at 1090. The district court should then consider the following factors: (1) how clearly the prior act has been proved; (2) how probative the evidence is of the material fact it is

admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself of any less prejudicial evidence. *Id.* (citing *Enjady*, 134 F.3d at 1433 ("first group of *Benally/Enjady* factors")). The district court should also consider: (1) how likely it is such evidence will contribute to an improperly-based verdict; (2) the extent to which such evidence will distract the jury from the central issues of the trial; and (3) how time consuming it will be to prove the prior contact. *Id.* (citing *Enjady*, 134 F.3d at 1433 ("second group of *Benally/Enjady* factors")).

## A. Preliminary Evidentiary Finding

Pursuant to *Benally*, the court must make a preliminary finding that a jury could reasonably find that the prior sexual assault occurred by a preponderance of the evidence. 500 F.3d at 1090. The incident involving S.B. is relevant only if the jury can reasonably conclude that the act occurred. *See Huddleston v. United States*, 485 U.S. 681, 689, 108 S. Ct. 1496, 1501 (1988). This does not, however, translate into a requirement that the court make a preliminary finding that the government has *proven* by a preponderance that the prior act occurred. *See id.*

Questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b). *See id.* "In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact … by a preponderance of the evidence." *Huddleston,* 485 U.S. at 690, 108 S. Ct. at 1501.

A jury could reasonably find by a preponderance of evidence that the act involving S.B. occurred. S.B. was able to testify to the time of year and specific place of the incident. (Hr.T.

12-13:18-2 and Hr.T. 13-14:24-25). S.B. recalled details of the evening prior to the incident. (Hr.T. 14-18:14-11). S.B. recalled what she was wearing and details of the room that she slept in that night. (Hr.T. 18-19:16-12). S.B. recalled where Defendant was located during the incident, and recalled specific details of how Defendant accomplished the touching of her body, how many times it occurred, and how the incident finally came to an end. (Hr.T. 19-26:25-8). S.B. was cross-examined about the incident and remained consistent in her statements of how the touching occurred. (Hr.T. 38-39:18-12). S.B.'s testimony was corroborated by the testimony of A.B., who was awakened by her daughter and observed Defendant in the room. (Hr.T. 58-59:10-4). S.B.'s testimony was also corroborated by B.P., who confirmed that A.B. and S.B. spent a night in the room described by S.B., and that A.B. told him the next day that Defendant had come into her room during the night and touched or patted S.B.'s back. (Hr.T. 108-113:8-5). Defendant's testimony also confirmed that S.B. spent a night in his home in the summer of 2006. (Hr.T. 132:13-18). Defendant's testimony also corroborated the general timeline provided by A.B.; that the night in question occurred shortly before Defendant entered a rehabilitation program for alcohol abuse. (Hr.T. 137:12-13).

The fact that Defendant denied that the incident occurred and presented countervailing evidence does not make evidence of the prior incident inadmissible. The court does not weigh the credibility of the witnesses at this point but simply assesses the testimony to determine whether a jury could reasonably conclude by a preponderance of the evidence that the act occurred. *See Huddleston*, 485 U.S. at 690, 108 S. Ct. at 1501. S.B.'s clear testimony of when, where, and how the incident occurred provides a sufficient basis upon which a reasonable jury could conclude the act happened, especially given that much of her testimony is corroborated by the other witnesses. Defendant also tries to attack the credibility of the witnesses and minor

details. However, the court concludes that there is sufficient reliable evidence from which a jury could conclude that the incident occurred.

**B.  The First Group of *Benally/Enjady* Factors and the *Benally/Guardia* Factors**

The first prong of the first group of *Benally/Enjady* factors directs the court to consider how clearly the prior act has been proved.  A.B. did not report the incident to police in 2006 and criminal charges were never filed.  However, a conviction for, or even adjudication of, a prior act is not required under Rule 413.  The Tenth Circuit has allowed the use of prior sexual assaults that did not result in convictions.  *See Benally*, 500 F.3d at 1092-1093 (affirming admission of prior sexual assault that did not result in criminal charges); *Meacham*, 115 F.3d at 1494-1495 (affirming admission of prior uncharged sexual misconduct); *Enjady*, 134 F.3d at 1434 (affirming admission of prior sexual assault that had not resulted in prosecution).  Furthermore, as outlined above, the testimony given by S.B. at the Rule 413 hearing is sufficient for a jury to reasonably conclude that the act occurred.

The second *Benally/Enjady* factor requires the court to assess how probative the prior sexual assault is of the material fact it would be admitted to prove. When the government seeks to introduce Rule 413 evidence, the district court has an obligation to fully evaluate the proffered evidence and make a clear record of the reasoning behind its findings as to whether the evidence survives the Rule 403 balancing test.  *Id.* at 1091.  As set forth with respect to relevance, the incident involving S.B. is very similar to the charged offense and probative of Defendant's intent in the instant case.  The government is required to prove both that Defendant acted intentionally and with a specific intent.  The prior sexual assault incident is probative of whether Defendant, by initiating the offenses when the victims were asleep, acted with a plan to increase his likelihood of success and decrease the likelihood of detection.  The prior sexual assault is also

probative of whether Defendant acted with a specific intent to abuse the victims and/or arouse or gratify his own desire.

To focus the probativeness analysis under the second factor, the district court may also consider: (1) the similarity of the prior acts and the charged acts; (2) the time lapse between the other acts and the charged acts; (3) the frequency of the prior acts; (4) the occurrence of intervening events; and (5) the need for evidence beyond the defendant's and the victim's testimony. *Id.* at 1090-1091 (citing *United States v. Guardia*, 135 F.3d 1326, 1331(10th Cir. 1998) (*Benally/Guardia* factors). The first and fifth factors weigh in favor of admission.

In *United States v. Charley*, 189 F.3d 1251, 1260 (10th Cir. 1999), the Tenth Circuit affirmed the admission of prior sexual misconduct where the district court had alluded to the similarity between the prior misconduct and the charged offenses, and there was little direct corroborating evidence of the charged conduct. In the instant case, there are many similarities between the prior incident and the charged offense. The victims are of the same gender and similar ages. Both victims met Defendant for the first time shortly before the offense. In both incidents the victim fell asleep and awoke to find Defendant touching her buttocks. In both incidents the presence of other persons near the victim failed to deter Defendant from engaging in the conduct. In both incidents it was the actions of the victims that terminated the touching.

The need for the prior incident evidence also renders the sexual assault of S.B. highly probative. *See Benally*, 500 F.3d at 1091-1092 (government's need for Rule 413 evidence weighed in favor of admission where government's case relied on child witnesses whose credibility would surely be challenged). Without the prior incident evidence, the instant case will essentially become a contest between R.S.'s statement that Defendant was awake while he was touching her buttock and inner thigh, and Defendant's statement that he was asleep at the

time.  The incident involving S.B. provides insight into whether Defendant was acting

intentionally (i.e. with a plan to take advantage of R.S.'s vulnerability) and whether Defendant

was acting with the specific intent to abuse R.S. or to arouse or gratify his own sexual desire.

The three remaining *Benally/Guardia* factors do not detract from the probative value of

the prior sexual assault.  The second *Benally/Guardia* factor directs the court to look at the lapse

of time between the prior event and the charged offense.  In the instant case, the time lapse is

seven years. The Tenth Circuit, however, has upheld the admission of Rule 413 evidence with

substantially longer time lapses.  The lapse of time itself does not negate the probative value of a

prior sexual assault.  *See Benally*, 500 F.3d at 1091 (allowing admission of prior sexual assaults

that occurred forty years prior to charged offense).  The Tenth Circuit has recognized that there

is no time limit beyond which prior sex offenses are inadmissible.  *See Meacham*, 15 F.3d at

1492 (allowing admission of prior sexual misconduct that occurred twenty-nine years prior to

charged offenses).  Furthermore, the similarity of a prior act to the charged offense may

outweigh concerns of remoteness in time.  *Id.* at 1495.  The third factor directs the court to

consider the frequency of the prior sexual misconduct.  In the instant case, the prior acts are not

frequent, but the lack of frequency has not been a barrier to the admission of prior sexual

misconduct evidence in other cases.  *See Enjady*, 134 F.3d at 1429 (affirming admission of one

prior rape); *Hollow Horn*, 523 F.3d at 887 (affirming admission of one prior rape).  Finally,

under the fourth *Benally/Guardia* factor, there are no intervening events that lessen the probative

value of the incident involving S.B.

The first group of *Benally/Enjady* factors also direct the court to consider how seriously

disputed the material fact is, and whether the government can avail itself of any less prejudicial

evidence.  *See Benally*, 500 F.3d at 1090.  The issue of intent will be seriously disputed in this

case, as Defendant has claimed that he was asleep at the relevant time and has effectively denied that he acted intentionally or possessed the specific intent required by 18 U.S.C. § 2246(3). Also, there is no less prejudicial evidence available to the government. Defendant did not make any statements indicative of his intent at the time of the touching and has denied that he had the capacity to even form intent. The government must rely on circumstantial evidence to infer intent in this case, and the prior sexual assault is the government's best avenue for illuminating Defendant's intent at the time of the conduct involving R.S.

### C. The Second Group of *Benally/Enjady* Factors

The second group of *Benally/Enjady* factors address possible dangers of Rule 413 evidence. Under these factors, the court must consider the likelihood that the Rule 413 evidence will contribute to an improperly-based verdict, the extent to which such evidence will distract the jury from the central issues of the trial, and how time consuming it will be to prove the prior conduct. *Benally*, 500 F.3d at 1090.

Evidence of the sexual assault against S.B. is not likely to contribute to an improperly-based verdict, nor is it likely to distract the jury from the central issue in the case—namely, whether the government has proven beyond a reasonable doubt that Defendant committed abusive sexual contact. The prior sexual assault is remarkably similar in scope and magnitude to the charged offenses. In fact, if the government were to bring charges against Defendant for the sexual assault of S.B., the government would utilize the very statutes that are charged in the instant Indictment. Therefore, as evidence of the prior incident will remain within the realm of the type of conduct described in 18 U.S.C. § 2246(3), this evidence is not likely to prompt the jury to render a verdict on improper bases or stray from a determination of whether the government has met its burden of proof.

Furthermore, these potential risks can be lessened with cautionary instructions to the jury.

*See Benally*, 500 F.3d at 1092 (district court provided limiting instructions to the jury prior to the admission of Rule 413 evidence). The government has requested that the following instruction be read to the jury in the event that evidence of the prior sexual assault is admitted:

> In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation, evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.
> However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the Indictment. Bear in mind as you consider this evidence at all times, the government has the burden of proving that the defendant committed each of the elements of the offense charged in the Indictment. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the Indictment.

This instruction will restrict the jury from utilizing the Rule 413 evidence for improper purposes and lessen any risk of juror distraction. *See United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (central assumption of our jurisprudence is that juries follow the instructions they receive).

Finally, considerations with respect to the amount of time required to hear the evidence do not weigh strongly against admission of the prior sexual contact. The government's evidence would consist of the testimony of two witnesses about a single incident of misconduct. The government estimates that the presentation of S.B.'s and A.B.'s testimony could be accomplished in less than two hours, including time for cross-examination and redirect examination. The court believes that the parties could present all evidence on this incident more efficiently than the evidence was presented at the evidentiary hearing. The court concludes that, given the highly probative nature of the prior sexual assault evidence, this amount of additional time to the government's case-in-chief does not warrant a wholesale exclusion of the evidence.

The court concludes that all of the relevant factors weigh in favor of admitting the other sexual assault evidence, particularly in light of the Tenth Circuit's directive that "courts are to 'liberally' admit evidence of prior uncharged sex offenses." *See Benally*, 500 F.3d at 1090; *Meacham*, 115 F.3d at 1492. The evidence of the prior sexual assault of S.B. is admissible under Federal Rule of Evidence 413. This evidence is also admissible under Federal Rule of Evidence 403, as the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Therefore, the court grants the United States' Motion in Limine to admit evidence of the prior sexual assault for use in the government's case-in-chief.

## CONCLUSION

Based on the above reasoning, the United States' Motion in Limine to Admit Evidence Pursuant to Federal Rule of Evidence 413 is GRANTED.

DATED this 19th day of February, 2014.

BY THE COURT:

DALE A. KIMBALL
United States District Judge